IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RANDY D. NEWLAND, )
 )
                       Plaintiff, )
 )
   vs. )
 )
ANDREW M. SAUL, Commissioner of )
Social Security Administration, )
 )   No. 3:19-cv-0078-HRH
                    Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Randy Dell Newland has timely filed his opening brief,[1] to which defendant, Andrew M. Saul, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On March 7, 2013, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that he became disabled on February 20, 2013. Plaintiff alleged that he was disabled due to back injury, torn rotator cuffs, learning disability,

---

[1]Docket No. 14.

[2]Docket No. 17.

his elbow, and depression. Plaintiff's applications were denied initially, and plaintiff requested a hearing. After an administrative hearing on September 3, 2014, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review of the ALJ's January 5, 2015 unfavorable decision. On June 20, 2016, the Appeals Council granted plaintiff's request for review and remanded the matter to the ALJ.[3] Upon remand, the ALJ held administrative hearings on August 18, 2017 and January 9, 2018, after which she again denied plaintiff's applications. Plaintiff again sought review of the ALJ's unfavorable decision. On February 27, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 11, 2018 decision the final decision of the Commissioner. On March 25, 2019, plaintiff commenced this action in which he asks the court to review the Commissioner's final decision.

General Background

Plaintiff was born on July 15, 1964. Plaintiff was 48 years old on his alleged onset date. Plaintiff has an 11th grade education. Plaintiff's past relevant work includes work as a production line welder, a production line assembler, a material handler, a production line maintenance mechanic, and a cook.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the

---

[3]Admin. Rec. at 229.

Social Security Act through June 30, 2017."[4]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since February 20, 2013, the alleged onset date. . . ."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: right rotator cuff repair, status post bilateral carpal tunnel releases, status post cervical fusion, and

---

[4]Admin. Rec. at 18.

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin. Rec. at 18.

lumbar degenerative disc disease. . . ."[7] The ALJ found plaintiff's "obesity, chronic bronchitis, alcohol and substance abuse, and depression" to be nonsevere impairments.[8] The ALJ considered the "paragraph B" criteria and found that plaintiff had mild limitations as to understanding, remembering, or applying information; mild limitations as to interacting with others; mild limitations as to concentrating, persisting, or maintaining pace; and mild limitations as to adapting or managing oneself.[9]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[10] The ALJ considered Listings 1.02 (major dysfunction of a joint due to any cause), 1.04 (disorders of the spine) and 11.14 (peripheral neuropathy).[11]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(d) and 416.967(c) except as limited by the

---

[7]Admin. Rec. at 18.

[8]Admin. Rec. at 18.

[9]Admin. Rec. at 19.

[10]Admin. Rec. at 19-20.

[11]Admin. Rec. at 20.

following. The claimant can never climb ladders, ropes, or scaffolds. He must avoid all non-weather related extreme cold and extreme heat as well as all dust, unprotected heights, and hazardous machinery."[12]

The ALJ found plaintiff's pain and symptom statements less than credible because they were inconsistent with the objective medical evidence and his daily activities.[13]

The ALJ gave Dr. Sklaroff's January 2018 opinion great weight.[14] The ALJ gave Dr. Moore's opinion great weight.[15] The ALJ gave Dr. Christensen's opinion great weight.[16] The ALJ gave some weight to Dr. Granholm's opinion.[17] The ALJ gave great weight to PA-C Crowley's opinion.[18] The ALJ gave little weight to Dr. Martinez's opinions.[19] The

---

[12] Admin. Rec. at 20.

[13] Admin. Rec. at 21.

[14] Admin. Rec. at 22. Dr. Sklaroff's January 2018 opinion is discussed below in detail.

[15] Admin. Rec. at 22. Margaret R. Moore, Ph.D., testified as a medical expert at the January 2018 administrative hearing. Dr. Moore testified that plaintiff's medically determinable mental health impairment was depression but that this was a non-severe impairment. Admin. Rec. at 59.

[16] Admin. Rec. at 23. Dr. Christensen's opinion is discussed below in detail.

[17] Admin. Rec. at 23. Dr. Granholm's opinion is discussed below in detail.

[18] Admin. Rec. at 23. PA-C Crowley's opinion is discussed below in detail.

[19] Admin. Rec. at 23. On December 22, 2015, Dr. Martinez opined that plaintiff could sit for less than one hour, could stand/walk for less than one hour, would need to be able to get up and move around every hour, could occasionally lift/carry 5 pounds, could not walk one block at a reasonable pace on rough or uneven surfaces, could climb a few stairs using a single hand rail, could occasionally grasp, could never use his left hand for fine
(continued...)

ALJ gave partial weight to the lay testimony of Jackie Lohrey, plaintiff's friend.[20]

At step four, the ALJ found that plaintiff "is unable to perform any past relevant work. . . ."[21]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" including working as a kitchen helper, an airport maintenance laborer, or a store laborer.[22]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from February 20, 2013, through the date of this decision. . . ."[23]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying

---

[19](...continued) manipulation, could frequently use his right hand for fine manipulation, could occasionally reach overhead, would frequently experience pain severe enough to interfere with attention and concentration, would need to take unscheduled breaks of one hour during an 8-hour work day, and would miss more than 3 days of work per month. Admin. Rec. at 1488-1491. Dr. Martinez's February 2017 opinion is discussed below in detail.

[20]Admin. Rec. at 24. Lohrey provided statements on May 20, 2013 and February 2015. Admin. Rec. at 826-829; 850.

[21]Admin. Rec. at 24.

[22]Admin. Rec. at 25. This finding was based on the testimony of the vocational expert who testified at the 2018 administrative hearing. Admin. Rec. at 80-81.

[23]Admin. Rec. at 25.

benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

As an initial matter, defendant complains that plaintiff did not raise some of his arguments in the "argument" section of his opening brief, instead raising them in the "summary of pertinent evidence" section. While it would have been preferable had plaintiff raised his arguments in the actual argument section of his opening brief, that he did not does not mean that the court cannot consider these arguments. Defendant was able to discern what arguments plaintiff was making and respond to those arguments in his opposing brief.

Turning then to plaintiff's arguments, plaintiff first argues that the ALJ erred in giving

Dr. Christensen's opinion great weight. Dr. Christensen examined plaintiff on August 15, 2013. Dr. Christensen's discussion was as follows:

> [T]he patient appeared to be generally functional in his activities of daily living, insomuch as he could dress and undress himself and get on and off the exam table without difficulty. He does not require a cane or crutch to ambulate. The patient's main complaint is pain in his shoulder. He states he has chronic pain. He is unable to do activities that require overhead work or range of motion in his shoulder. Further evaluation is warranted. The patient appears to have at least an impingement syndrome. However, the examination is somewhat limited today due to patient guarding and complaints of pain. An orthopedic evaluation and MRI scan would be helpful. The patient complains of chronic low back pain. He states he has five herniated discs. However, there is an MRI available that indicates no disc herniation and no nerve root impingement as of 2010. The patient complains of pain in his neck. On x-ray today there appears to be some degenerative disc and joint disease. The patient has had a prior fracture to his right elbow. He states he has had surgery several times for repair. He does have some limited range of motion. The patient retains good range of motion in his wrists and hands. He has good dexterity. The patient states that he had ear problems as a child. He had an infantile surgery on both ears. He currently does have some evidence of hearing loss. He does not use a hearing aid and there was no difficulty communicating today. The patient currently denies depression. He states that he has chronic pain and he does admit to being an alcoholic, although he states he is sober at this time. Today the patient appears to be generally functional and capable of at least light activity within the parameters mentioned above. It is difficult to get a complete picture of the patient's true capabilities based on today's examination. It would seem that there is perhaps quite a bit of magnification of symptoms.[24]

---

[24]Admin. Rec. at 1141.

The ALJ gave great weight to Dr. Christensen's opinion that plaintiff was "capable of at least light activity" and in her discussion mentioned that Dr. Christensen believed that perhaps there was "'quite a bit of magnification of symptoms.'"[25]  Plaintiff argues that the ALJ improperly focused on this negative remark made by Dr. Christensen and failed to take into account his opinion that "[f]urther evaluation is warranted" and that plaintiff "appears to have at least an impingement syndrome."[26]  Plaintiff seems to be arguing that the ALJ ignored Dr. Christensen's opinion that further evaluation of plaintiff's symptoms was necessary.

To the extent this is what plaintiff is arguing, this argument fails, in large part because the majority of the medical records in this case came in <u>after</u> Dr. Christensen examined plaintiff in 2013.  There was "further evaluation" of plaintiff's impairments.

To the extent that plaintiff is arguing that the ALJ focused too heavily on Dr. Christensen's comment about symptom magnification, it should be noted that Dr. Christensen was not the only medical provider who believed that there might be some magnification of symptoms here.  In September 2016, Dr. Eule noted some concerns about "secondary gain issues."[27]

All that said, there is still a problem with the ALJ's treatment of Dr. Christensen's

---

[25]Admin. Rec. at 22-23.

[26]Admin. Rec. at 1141.

[27]Admin. Rec. at 1527.

opinion, although this is not an issue that plaintiff raised.  The ALJ gave great weight to Dr. Christensen's opinion that plaintiff could perform "light activity" but Dr. Christensen put some limitations on this "light activity."  Specifically, Dr. Christensen opined that plaintiff was "generally functional and capable of at least light activity within the parameters mentioned above."[28]  One of the parameters mentioned by Dr. Christensen was no "activities that require overhead work or range of motion in his shoulder."[29]  This parameter was placed on plaintiff's functional capacity despite Dr. Christensen's concern about symptom magnification.  The ALJ did not expressly explain why she rejected this portion of Dr. Christensen's opinion, although it may be possible to infer from other portions of her decision that she did so because plaintiff had shoulder surgery in 2016 and because plaintiff was once observed pulling his hoodie over his head.[30]  To the extent these were the reasons the ALJ rejected Dr. Christensen's opinion about plaintiff's ability to reach overhead, they are not legitimate.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence").

---

[28]Admin. Rec. at 1141.

[29]Admin. Rec. at 1141.

[30]Admin. Rec. at 21.

As for the fact that plaintiff had shoulder surgery in 2016, defendant has argued that there was no reason for the ALJ to bifurcate the assessment of plaintiff's residual functional capacity pre- and post-surgery because plaintiff testified that his limitations were the same both before and after surgery. More specifically, plaintiff testified that he could still not lift his arms after surgery.[31] In other words, defendant is contending that plaintiff had the same limitations pre- and post-surgery. If that is true, plaintiff's 2016 shoulder surgery would not have been a legitimate reason for the ALJ to reject Dr. Christensen's opinion about overhead reaching. As for the one time plaintiff was observed pulling his hoodie over his head, it is difficult to perceive how plaintiff's ability to dress himself would translate into an ability to overhead reach continually throughout an 8-hour work day.

The ALJ erred as to Dr. Christensen's opinion. Although the ALJ gave this opinion great weight, she did not include some of the limitations assessed by Dr. Christensen and she failed to give legitimate reasons for not including the assessed limitations.

Plaintiff next argues that the ALJ erred as to Dr. Granholm's opinion. Dr. Granholm was plaintiff's PCP from April 5, 2013 through December 18, 2014. On March 20, 2014, Dr. Granholm opined that plaintiff could not work because he needed surgery and had inadequate pain management, primarily because he could not afford treatment.[32]

---

[31]Admin. Rec. at 96-97.

[32]Admin. Rec. at 1384.

Dr. Granholm was a treating physician. Because Dr. Granholm's opinion was contradicted by Dr. Christensen's and Dr. Sklaroff's opinions, the ALJ was required to give specific and legitimate reasons for only giving some weight to Dr. Granholm's opinion.

The ALJ gave some weight to Dr. Granholm's opinion because Dr. Granholm had "a treatment relationship with" plaintiff but did not give it more weight because it "appears to be essentially a record of the claimant's subjective allegations/beliefs."[33] Plaintiff argues that this was not a legitimate reason.

The court agrees. As plaintiff points out, Dr. Granholm cited to objective medical evidence in support of her opinion. Dr. Granholm noted that plaintiff had rotator cuff tears, limited back range of motion, and leg pain, all of which was documented/supported by a 2013 MRI.[34]

Plaintiff next argues that the ALJ erred as to PA-C Crowley's opinion. On November 2, 2015, Jennifer Crowley, PA-C, opined that plaintiff could lift/carry 5 pounds frequently, lift/carry 50 pounds occasionally, and could occasionally grasp, do fine manipulation, and reach overhead.[35] Crowley offered this opinion after plaintiff had left carpal tunnel release in June 2015 and right carpal tunnel release in October 2015.[36] Crowley commented that

---

[33]Admin. Rec. at 23.

[34]Admin. Rec. at 1380.

[35]Admin. Rec. at 1483.

[36]Admin. Rec. at 1475, 1618, 1668.

"[w]e expect improvements for up to 12 months following carpal tunnel surgery. It is hard to say at this early date how much improvement or impairment [plaintiff] will have."[37]

The ALJ gave great weight to Crowley's opinion "because it comes from a treating source and is not inconsistent with the other medical evidence of record, which does not document any significant subsequent treatment for associated symptoms."[38] Plaintiff argues that the ALJ erred in giving this opinion great weight because it does not capture his functional capacity prior to his 2015 wrist surgery. Plaintiff contends that his RFC should reflect his functional capacity from his alleged onset date in 2013 through the date of the ALJ's 2018 decision. He argues that the very fact that he had to have surgery suggests that at least from the alleged onset date in February 2013 to his 2015 wrist surgery, he had vocationally impaired wrists. Plaintiff insists that the ALJ was required to consider the longitudinal record and not just focus on his capacity following surgery.

Defendant again argues that there was no reason for the ALJ to bifurcate the assessment of plaintiff's residual functional capacity because plaintiff testified that his hands/wrists were worse after surgery.[39] If, as plaintiff testified, his hands/wrists did not improve after surgery, then there was no reason for the ALJ to bifurcate his RFC. The ALJ did not err as to PA-C Crowley's opinion.

---

[37]Admin. Rec. at 1484.

[38]Admin. Rec. at 23.

[39]Admin. Rec. at 97.

Plaintiff next argues that the ALJ erred as to Dr. Martinez's February 2017 opinion. Dr. Martinez was plaintiff's PCP from August 2, 2015 through November 28, 2017. On February 27, 2017, Dr. Martinez opined that plaintiff could sit less than one hour; stand less than one hour; would need to get up and move around every 15-20 minutes; could occasionally lift/carry 5 pounds; could never/rarely grasp objects, use hands for fine manipulations and overhead reach; would frequently experience pain severe enough to interfere with attention and concentration; would need an unscheduled break every 15-30 minutes; and would miss more than three days of work a month.[40]

Dr. Martinez was a treating physician, whose opinion was contradicted. Thus, the ALJ was required to give specific and legitimate reasons for rejecting his opinion. The ALJ rejected Dr. Martinez's opinion because it was "not consistent with the other evidence of record including a subsequent examination by Dr. Martinez that notes negative findings in key areas. This includes a normal gait and stance, no sensory abnormalities, normal deep tendon reflexes, and normal muscle tone and strength. . . ."[41] Plaintiff argues that this reason was not legitimate because the treatment note to which the ALJ cites does not contain any "negative findings."

---

[40]Admin. Rec. at 1697-1699. On August 25, 2017, Dr. Martinez wrote that "[t]he limitations expressed [on] February 27, 2017, remain[] accurate to date." Admin. Rec. at 2178.

[41]Admin. Rec. at 23.

However, the treatment note in question, which is for plaintiff's visit with Dr. Martinez on November 28, 2017, states that on exam, "[t]he cranial nerves were normal, no sensory abnormalities were noted, gait and stance were normal, and the deep tendon reflexes were normal. . . . [T]he muscle tone was normal, and motor strength was normal."[42] These are the exact findings to which the ALJ referred.

Nonetheless, the ALJ erred as to Dr. Martinez's February 2017 opinion. The ALJ cited to one treatment note from Dr. Martinez in support of her rejection of his February 2017 opinion. One portion of one treatment note is not substantial evidence. The ALJ did not identify any other evidence in the record that was not consistent with Dr. Martinez's opinion. "An ALJ must provide 'sufficiently specific reasons' for rejecting the opinion of a treating physician. Hart v. Colvin, 150 F. Supp. 3d 1085, 1090 (D. Ariz. 2015) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). Here, the ALJ found that Dr. Martinez's opinion was "not consistent with the other evidence of record[,]"[43] but did not identify what this medical evidence was, except for the one treatment note discussed above, which by itself, is insufficient evidence to support the ALJ's rejection of Dr. Martinez's February 2017 opinion.

Next, plaintiff argues that the ALJ failed to consider Dr. Eule's treatment notes and that by doing so, the ALJ ignored the critical nature of his cervical spine issue prior to his

---

[42]Admin. Rec. at 2224.

[43]Admin. Rec at 23.

surgery.  Plaintiff also seems to suggest that the ALJ should have obtained a residual functional capacity opinion from Dr. Eule since he did plaintiff's cervical spine surgery in 2017.

This argument fails because the ALJ did cite to some of Dr. Eule's treatment notes as well as noting that plaintiff had cervical spine surgery in 2017.[44]  To the extent that plaintiff is arguing that the ALJ should have obtained a medical opinion from Dr. Eule, the ALJ is under no obligation to obtain medical opinions from every treating source, which is what plaintiff seems to be implying.

Finally, plaintiff argues that the ALJ erred because she failed to fully and fairly develop the record.  "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).  But, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the "record is inadequate to allow for proper evaluation of the evidence[.]"  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (citation omitted).

Plaintiff argues that the ALJ failed to fully and fairly develop the record because the ALJ failed to order the two consultative exams that Dr. Sklaroff recommended at the 2017 administrative hearing.  At that administrative hearing, Dr. Sklaroff testified that plaintiff

---

[44]Admin. Rec. at 21.

needed consultative exams by a neurologist and an orthopod in order to determine what limitations he might have as a result of his impairments.[45] The ALJ stated on the record that she would order those exams,[46] but there is no evidence in the record that the ALJ ever ordered the exams or that such exams were ever done. Thus, plaintiff argues that it is clear that the ALJ failed to fulfill her duty to full and fairly develop the record.

Defendant argues that the ALJ did not fail to fulfill her duty to full and fairly develop the record given that an additional 650 pages of medical evidence came into the record after the 2017 administrative hearing, including treatment records from a neurologist.[47] Defendant argues that these records were sufficient to provide the additional information that Dr. Sklaroff needed to assess plaintiff's residual functional capacity, as evidenced by the fact that Dr. Sklaroff relied on these records at the 2018 administrative hearing.[48] In short, defendant argues that the medical evidence that was added to the record after the 2017 administrative hearing remedied any gaps or ambiguities in the record.

While defendant is correct that there was additional medical evidence that came into the record after the 2017 administrative hearing, Dr. Sklaroff testified at the 2018 hearing that there were still gaps in the record. For example, Dr. Sklaroff testified that "you need a

---

[45] Admin. Rec. at 108, 111.

[46] Admin. Rec. at 113.

[47] Admin. Rec. at 2792-2811.

[48] Admin. Rec. at 49-53.

workup for" the peripheral neuropathy[49] and "probably . . . a good eye exam. . . ."[50]  More importantly, what is still missing from the record is an examination of plaintiff by neurologist who can then opine as to what limitations plaintiff has now that he has had surgery on his wrists, shoulders, and neck.  In other words, the ALJ should have ordered the consultative neurological exam that she said she was going to order.  The ALJ's duty to fully and fairly develop the record was triggered here, but she failed to fulfill this duty.

Plaintiff requests that this matter be remanded for further proceedings and because of the gaps in the record, such a remand is appropriate here.  Plaintiff also requests that the court require that his claim be adjudicated "elsewhere than the Anchorage hearing office."[51]  But, the court has no authority to remand this matter to a different hearing office.

### Conclusion

The decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 5th day of September, 2019.

/s/ H. Russel Holland
United States District Judge

---

[49]Admin. Rec. at 54.

[50]Admin. Rec. at 54.

[51]Plaintiff's Opening Brief at 25, Docket No. 14.